Good morning, Your Honor. It's Chris Emsche on behalf of the appellant to JEM Group Inc. Your Honor, if I may, I would like to reserve three minutes of my time for rebuttal. Your Honor, a quick mention of the procedural history. So this underlying action is a putative class action alleging by plaintiff against several defendants, including JEM, violations of certain debt-adjusting statutes in the CPA regarding certain debt settlement services. Some of those defendants have settled, and so the appeal before the court is only with respect to JEM. And I'd like to clarify as well that I do not appear on the pleadings. That was a recent substitution of counsel, but I would respectfully request no adverse interest be drawn from that. It was simply a circumstance where we had multiple defendants, and the Greenspoon Martyr Firm who did the underlying briefing and the briefing before the Ninth Circuit, in a perfect world they would be here defending their own good work, simply in case they were representing multiple defendants. And because there was a fork in the road and some decided to settle without any admission of liability, the remaining appellant is JEM in this case. Your Honor, Your Honors, there are two narrow legal issues before the court. And just to recap, they're spelled out in the briefing, but just to recap, the two issues are whether, first of all, the issue of the enforceability of the arbitration clause that was in the relevant agreement with plaintiff in this case should have been decided by an arbitrator, rather than the district court as it was decided in this case. And particularly when that arbitration clause was not mentioned in the complaint in any respect, but rather the complaint constituted a challenge to the contract and the validity of the contract as a whole. The second issue is, with respect to the district court's order denying the motion to compel arbitration, is whether the state law rules that impose higher standards as plaintiffs, or the district court in this case, would like to impose on arbitration clauses, clauses other than clauses in attorney-retainer agreements violate the Federal Arbitration Act. And what it really boils down to, Your Honors, is I think you can look at a cocktail of cases that I think are dispositive in this case. If you look at the Buckeye case in 2006 by the Supreme Court, if you look at the Negrompa case, which is a Ninth Circuit case, also in 2006 on Ninth Circuit, and then the Twombly case, which says, Hey, look, if you're going to challenge an arbitration clause, you've got to at least plead facts that show specifically you're challenging that arbitration clause. And then you roll that in with the Supreme Court's decision in AT&T Concepcion, and what you see is the strong preference for enforcing private arbitration agreements, a circumstance where you have very sophisticated counsel representing the putative class in this case. And, in fact, the district court certified settlements under the class action standards, and part of that analysis is whether the court found their suitable class representatives and capable counsel in those circumstances they did. And they made an election to that counsel not to challenge the arbitration clause, essentially just ignore it. Well, I'm sure they didn't make a challenge to whether or not the contract was unconscionable. Your Honor, they challenged the contract as a whole but did not specifically, and they haven't denied they haven't specifically mentioned or challenged the arbitration provision. Well, I'm not sure this is so much a pleading case as a case as to whether or not under state law of unconscionability a district judge is allowed to say as a matter of state law this is unconscionable and not enforce the arbitration agreement consistent with Concepcion. Is a state law able, consistent with the federal arbitration clause, to say that a contract is unconscionable and therefore an arbitration clause contained within that contract is not enforceable? Well, Your Honor, I would say certainly the district court under certain circumstances can do an analysis on both procedural and substantive unconscionability. And in this case, the district court did a procedural analysis and said and found as part of the order that it was procedurally unconscionable. However, that was focused on the process, and I think it puts a little bit the cart before the horse because before we can get to that issue, we have the issue of who should be deciding the issue about the enforceability of the contract. And what I believe the Buckeye decision coupled with Twombly and the Negrompa decision and Concepcion says is, look, we really got to give meaning to that federal arbitration act. It's got to have some teeth. We've got to liberally construe it. And so before we can get to that issue, we should have the arbitrator decide whether this contract is void or not. It doesn't mean that the arbitrator may determine, you know, this is a void for other reasons. But the fact is, who's deciding at the first instance? Does it make a difference whether the challenge is fraud in the inducement or fraud or a mistake in ever forming a contract? I mean, there's two kinds of challenges about the contract. One, I was fraudulently induced to enter into it. I know I entered into a contract, but that was by basis of fraud. The second approach is I never thought I was entering into a contract in the first place. Now, we know that this clause says the arbitrator shall decide the contract and its meaning. But what about the claim where the argument is that we never entered into a contract at all? It's not a question of interpreting it. We just never entered into it. Is that outside the parameter of the arbitrator? Isn't that what the argument was here? Well, Your Honor, I think that would be before an arbitrator. Why? What law do you have on that? Fair question. So if we look at the Buckeye decision, we see it makes the dichotomy between, one, challenges to the contract enforceability as a whole and then specific contracts to arbitration. Right. But, no, that's cutting a broader brush than I'm asking. You have that brush about whether you're challenging just the arbitration clause within the contract or challenging the whole contract. I'm trying to go to the next level up from that. Let's assume it's the whole contract. Everybody agrees, I think, that it's the arbitrator that will decide the meaning of the arbitration clause. But the question is, when you're challenging the whole contract, is there a difference on what you have to submit to arbitration? If the challenge to the whole contract is that I never thought I was entering into a contract at all Or, yeah, I did enter into a contract, but it was fraudulently induced. Well, Your Honor, you're correct that those are two different arguments. Yes. And I would submit that those would be properly for the arbitration. And what authority? I'm not aware of authority. So that's why I'm asking you. Do you have any authority that says that an argument that there was no contract at all is to go to the arbitrator? Well, my interpretation is that I never entered into it. Not that it should be set aside, but that there never was one. Yeah. Well, again, we may just have a respectful difference of opinion. My view is that that would be encompassed by the cases I've cited. But I would say, Your Honor, in this case But do you have a case that that issue was raised and addressed by an appellate court? Your Honor, one doesn't come to mind. Nor did it to me. As I sit here today. But, again, I think it is a broader brush issue. But I think that's my view is it would be encapsulated in the cases that are cited in the briefing. However, Your Honor, I'd like to point out, in that circumstance, though, again, I think it should be before an arbitrator, there really isn't a question here. Because plaintiff, there's no dispute that she signed the contract. There's no dispute we got the foreclosure. No, but there is a dispute. She says, I never did sign that contract. She said, I never, you don't have a contract until you have an intent to sign, to join. And she said, maybe I clicked sign. And that, of course, is a whole other issue. Can you click sign contracts? But putting all that aside, she said, I never thought I was clicking on that so that it was as if I never entered into a contract at all. I never even knew I was dealing with this other party. Your Honor, I guess I would direct you to the record, respectfully, the record at page 210 through 213, which is the attorney-retainer agreement issue. And there's clearly a misdemeanor signature and date on that contract. I think factually, factually, that's undoubtedly true. But the question is, was that everybody defines contracts as the intent of two people to enter into an agreement. And she says, I didn't have that intent. It was a mistake. Well, again, Your Honor, I think if you give force and effect to the spirit and letter of Concepcion and the recent decisions that emphasize the importance of enforcing the Federal Arbitration Act, that that issue should probably be before an arbitrator. Well, are you really saying that? Or are you saying, I mean, that is what you were saying, but wouldn't it be better maybe to say that that goes to the judge but that the judge should enter some kind of a, that the judge made an erroneous ruling that we ought to conclusively reach the judgment that if you sign something, you've intended it. Is that, I mean. Well, that's one possible interpretation. But that's not, you're saying that it's not even for the court, in the first instance, to look at the entire contract. Based on my understanding of the case law, I believe the enforceability of the contract as a whole, including that issue, would go to the arbitrator. You know, I'm going to pursue Judge Bell's question with respect to, let's say that she signs a contract, but her defense, when there's a suit on the contract to enforce an arbitration clause contained within it, she says, this contract is unconscionable under state law. You're telling me that the arbitrator gets to decide rather than the judge gets to decide whether the contract is unconscionable under state law? Well, Your Honor, I think I would answer that question in reference to the specific facts of this case, Do you have a case that tells me that? That the unconscionability of a contract containing an arbitration clause is for the arbitrator to decide rather than the judge? Certainly, certain provisions of the contractor are severable. And if that's an issue, after we go through the gateway issue of who determines whether the contract as a whole is enforceable, that would be a secondary issue. That's not quite the answer to my question. My question is, do you have a case that holds that unconscionability of a contract containing an arbitration clause is for the arbitrator to decide? As a sitter today, I don't recall a specific case addressing that issue. Okay. So I'll take it then for the moment that it's for the judge to decide whether or not this contract is unconscionable. This judge, Judge Ryan, decided it was unconscionable because the requirements under Washington law to enter into a retainer agreement with an attorney were not complied with. Is he wrong as a matter of state law that this is unconscionable? Yes, sir. I would respectfully say that decision was not correct in this circumstance because the unconscionability analysis was focused on the procedural unconscionability, but it's applying additional requirements above and beyond regular fiduciary obligations. And there's a citation to the Washington Ethics Opinion. These are all older decisions under ABA Ethics Opinion that talk about specific state law heightened requirements specific to arbitration. And under Concepcion and the enforcement of the Federal Arbitration Act, I think the rule is that in cases like that there's preemption if there's additional requirements put with respect to the arbitration clause. So that issue, the issues on which the judge decided the unconscionability, the procedural unconscionability, shouldn't have been reached in this instance. Because you say Washington unconscionability law is preempted by the Federal Arbitration Act? Is that the argument? Your Honor, I believe so. With respect to those specific arguments that were in basis for the decision that were reached by the judge in this case. And you're obviously then saying that in certain circumstances a state court or a Federal court complying state law can hold a contract unconscionable but you say on the specific facts of this one they can't. So what's different about this one? Well, this one, again, it's the procedural unconscionability that was reached with respect to heightened requirements. Essentially, the judge said, you know, I believe there should have been some additional disclosures regarding the arbitration provision. Well, he doesn't say I believe. He says Washington law requires. Correct. Yeah. So Washington law requires that all material issues relating to attorney's fees or attorney's relationship with you have to be, if they're material, they have to be clearly and fully disclosed. And there's nothing unique to arbitration in that general statement of law, is there? That's just a general statement that any material provision in an attorney contract has to be clearly stated. I would agree that's the generals of professional responsibility. Okay. That's Washington law. That's Washington law. Right. Correct. So since that general statement is not particularly focused on arbitrations, do you think that that is somehow going to be preempted by the Federal Arbitration Act, a general application of the law? I don't believe so, Your Honor. Okay. So as long as we find out then that these provisions about arbitration are material, that's all we have to address then. Is that a material statement? Because if it is, then it falls under the generic law of the State of Washington, which you have agreed would not be preempted by the Federal Arbitration Act, right? Your Honor, I think, again, that subsumes the arbitration issue. And the arbitration issue in this case, where you say you need to have additional specific disclosures about the arbitration clause. The arbitration clause speaks for itself. But what Washington law imposes a separate and distinct obligation pertaining to arbitration rights, as opposed to any other material clause in an attorney agreement? Well, Your Honor, the opinions relied on by opposing counsel relate to WSBA, Washington State Bar Association opinion, and ABA opinion from about 10 or 15 years ago. And those have two different aspects, both a fiduciary obligation and arbitration heightened disclosure obligations. And to the extent you look at that for guidance, I would respectfully submit those additional heightened requirements. Now, there's clearly disclosures as to arbitration, but specific things as your rights with respect to a jury and what you mean by waiving. Specific heightened requirements as to arbitration, Jim's position is low. Let me just ask it this way. Do you argue that Washington, just applying Washington law, do they require more specific disclosure about attorney arbitration clauses than they do about any other material clause in an attorney relationship? Your Honor, I don't believe it should. I don't think it does. Yeah. So basically, you are somehow saying that even though Washington law about the kinds of disclosures in attorney contracts has to be clear, and that's a generic rule, that when that generic rule is applied to arbitration provisions in an attorney agreement, somehow it becomes preempted. And is that consistent with the Supreme Court, which has said, basically, as I understand it, that as long as you have generic rules, the mere fact that it might relate to arbitration isn't going to preempt it. It's only when you start focusing on the arbitration aspects that we're getting into a preemption problem. I believe that's correct, Your Honor. But again, in that general sense, if you could look at disclosure, I think it's sufficient. Okay. We've taken you over time. We've entirely used up the two minutes you sought to reserve, plus a little bit. Let's hear from the other side, but we will give you a chance to respond. Okay, fair enough. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Erica Nooser, and I represent Rosita Smith. And if I may, I'd like to just jump into the last issue that you were discussing with my opposing counsel, and that is the procedural unconscionability argument. And to answer your question, whether or not this is a heightened requirement on arbitration clauses, I just don't think that's the case here. Really what's going on is the Washington Rule of Professional Conduct 1.5 requires attorneys to give clients a reasonable and fair disclosure of all material terms of a fee agreement. Whatever they are. Whatever they are, all material terms. And, in fact, we know that that heightened requirement applies to arbitration clauses because we have the WSBA opinion that tells us that. And we also know that that heightened requirement applies to contingent fee, letting the client know what a contingent fee is and how that's going to be calculated, letting the client know what the alternatives are to agreeing to a contingent fee. The client could pay hourly instead, or the client could pay on retainer. Those heightened requirements apply to all material terms of the fee agreement, including the arbitration clause. So it's not a heightened requirement that's focused on arbitration clauses. It's a requirement that's focused on the uniqueness of the attorney-client relationship and the fiduciary obligations that attorneys owe to their clients. And this is completely consistent with Concepcion. Now, here we know LHDR didn't make any disclosures to Ms. Smith. So even what those disclosures would be under Washington's RPCs, we don't even have to go that far because LHDR made none. LHDR had no contact with Ms. Smith whatsoever when it entered into the attorney-retainer agreement with her. This is a clear violation of the Washington Rules of Professional Conduct, which set minimum standards for attorneys who practice in the state of Washington. And those minimum standards are to guarantee the public good and the protection of clients. Here, Ms. Smith was deprived of those protections. Indeed, she didn't even get a chance to talk with the attorneys who purportedly were going to represent her about any aspect of the representation, let alone the attorney-retainer agreement. On these facts, the district court properly decided that LHDR failed to comply with its fiduciary obligations when entering into a fee agreement with Ms. Smith, and specifically that LHDR failed to make fair and reasonable disclosures of all material elements of the fee agreement. Were there any other failures that were relied upon other than the failure to disclose arbitration? Were there other failures that were relied on as nondisclosed that would have vitiated the contract? Not in the court's opinion. It focuses strictly on this particular defect. That's correct, Your Honor. And that's consistent with Buckeye, so going to the sort of procedural issue here, which is who decides arbitrability, the court or the arbitrator. And Buckeye says that the court decides when the challenge is specifically to the arbitration clause, which is what we have here. So while Ms. Smith does allege that the contract itself is void because it violates Washington's Debt Adjusting Act, that's not the ground on which the motion to compel arbitration was denied. The motion to compel arbitration was denied because of the procedural unconscionability for violation of Washington rules of professional conduct. And that denied the entire contract with the attorney, or did it deny only the arbitration provision in the contract with the attorney? Yeah. Here we're just focused on whether or not the motion to compel arbitration was properly denied. So we don't even have the issue of whether the whole contract has vitiated has never even come up. That hasn't come up yet, Your Honor. That's correct. Is that remaining to be resolved in the district court, whether or not the entire contract is viable? Is that still an issue that's pending? It's not an issue that there's any motion on at this point. And one point that we would make is that plaintiff has no contract claim here. This is not a contract case. You don't even need to look to the contract in order to decide plaintiff's claims. Her claims are that the defendants here violated the Washington Debt Adjusting Act by charging fees in excess of the limits set by that act. And the reason that she alleges in her complaint that the contract is void is because the DAA itself says that if there's a contract that purports to charge fees in excess of the DAA, then that contract is void. But her claims in the complaint are not contract claims. She does not bring a breach of contract claim. She does not rely on the contract for any of her claims against any of the defendants. So at that point, the validity of the contract may never come up. I think that's correct, Your Honor. So I wanted to address the procedural issue of who decides. And in the Ninth Circuit, this Court has taken two approaches to deciding that question, the first one being the analysis in Bridge Fund, which is cited at length in both parties' pleadings before this Court. And I wanted to focus on Jem's argument that the district court should not have decided arbitrability, which is premised on the language in Buckeye taking out of context that crux of the complaint language. But Buckeye's framework for analyzing this issue is clear. It sets forth that challenges to the validity of an arbitration agreement can be divided into two types, one type challenging, as we've discussed, the validity of the arbitration agreement specifically, and the other challenging the contract as a whole. Here, Ms. Smith again challenges the arbitration clause specifically. Jem argues that because she doesn't raise this challenge in the complaint, the Court cannot even consider the validity of the arbitration agreement. But Bridge Fund specifically rejected this precise argument. And I think what's important here is, again, the substance of the challenge, which makes sense in the context of Section 4 of the FAA, which requires a court to be satisfied that the making of the arbitration agreement is not an issue before it can compel arbitration. Section 4 doesn't say that the court can only make that decision if it's raised in the plaintiff's complaint. The court needs to be satisfied that the making of the arbitration clause is not an issue before it compels arbitration. This is also not a departure from Supreme Court precedent. It's not that they have to be satisfied whether it's a valid agreement, but just whether there was a making of such an agreement. Whether I think the court has to decide whether there was an agreement to arbitrate. I think that's correct. And I think for there to be an agreement to arbitrate, it has to be. The meaning of the arbitration agreement. That's for the arbitrator. You would agree with that. The meaning of the arbitration agreement? The scope of it. The scope of it? I think that depends on the facts. And that actually brings me to this Court's second approach to this issue, which was recently decided in Cramer v. Toyota, which I submitted as a supplement to the record yesterday. And in that case, the court makes this issue of who decides even more simple in this particular context. The court says that where a non-signatory seeks to enforce an arbitration clause, it's the court who decides. Plain and simple. So we just look to the terms of the arbitration clause, and if the arbitration clause itself does not contain clear and unambiguous language that the signatory agrees to arbitrability with a non-signatory, then the court decides the issue. And that's exactly what we have here. We have a contract that defines the parties at the outset in the very first sentence as LHDR, who's not a party to this appeal, and Ms. Smith. Those are the parties. The arbitration provision of the contract says that arbitration will be between LHDR and the client, Ms. Smith. GEM is not included at any point in the definition of parties or in the arbitration clause. GEM, however, is referenced in other provisions of the contract, a contract drafted by attorneys, attorneys who knew how to include and did include GEM in other provisions of the agreement,  or in the arbitration provision itself. So I think relying on Kramer, we can just look at the unmistakable language of the arbitration clause and say the court properly decides arbitrability in this case. So you're not denying, though, that a non-signatory to an arbitration agreement might be able to invoke that arbitration agreement. You're simply saying that under Kramer that it's the court that makes that decision. That's correct, Your Honor. So the issue that was later raised in this case, which we haven't addressed in our oral argument, about the ability of GEM to assert this arbitration provision, do you concede that getting around all these other procedural problems we've talked about, do you agree that if all of those were set aside, which is like asking Mrs. Lincoln otherwise what she thought of the play, do you agree that GEM could assert that? So first, yeah, I think that's right. We have to say who decides here, the court properly decides. Then we have to say is the arbitration agreement one that can be enforced? No, because it's unconscionable. But then getting to the issue of is it possible for a non-signatory ever to enforce an arbitration clause, sure, that is possible. Here on these facts, I don't think we get there. Conceptually, it's possible. Let's just say you can have a third-party beneficiary who's a non-signatory who can nonetheless enforce. Yes, and I think that's definitely possible. But getting to that issue, first, again, if we look to Cramer, the second issue that Cramer addressed was can a non-signatory, now once the court decides can a non-signatory enforce the arbitration provision, and Cramer again said we look to the language of the arbitration clause. And Cramer decided no, they can't, because the arbitration clause is clear and unambiguous that the non-signatory cannot enforce it. Well, but you can look to the entire contract to see who is a beneficiary of the contract. You're not just limited to the arbitration clause to make that determination. That's correct, Your Honor, and that brings us to what Washington law is on third-party beneficiaries. And Washington law requires a clear intent that both parties to the contract intended to create a third-party beneficiary relationship. That intent requires that the signatory who's being forced to compel arbitration have taken on some promise directly to the third-party beneficiary. We don't have that here. We have specific language in the contract that Ms. Smith's promises are to pay LHDR and that LHDR will withdraw funds from Ms. Smith's account. Ms. Smith undertakes no promises to Jim and vice versa. Jim undertakes no promises to Ms. Smith. So under Washington law, we don't even have a third-party beneficiary relationship. And one thing that I think is telling is we have no case on either side on this issue, and Jim itself has to go all the way to 1981, a case out of the Seventh Circuit applying Indiana law to try and make this argument, which really is an argument in the end about equitable estoppel. In that case, Hughes Masonry Company versus Greater Clark County, the signatory sought to enforce the elements of a contract against a non-signatory, specifically alleged the non-signatory had violated duties under that contract, and therefore the court found it would be inequitable for the plaintiff in that case to say, we're holding you to the terms of the contract, but we don't want to have to go to arbitration with you because you're a non-signatory. That's really an equitable estoppel argument, and it doesn't apply here for the reasons that I discussed earlier, which are that there are no contract claims here. The claims don't relate to or arise out of the contract. We don't even have to look to the terms of the contract to find that the defendants here violated the DAA. And we don't need to reach any of this if we were to simply affirm the district court on the ground that the district court properly held that the arbitration provision is unconscionable. That's correct, Your Honor. Yeah. So for these reasons, plaintiff respectfully requests the court affirm the district court in all respects. The district court properly decided the issue of arbitrability and found the arbitration clause procedurally unconscionable under Washington law, given LHDR's failure to comply with its fiduciary obligations as attorneys when entering into fee agreements with Washington consumers. And the district court also properly decided that JEM made no showing that it is entitled to enforce the unconscionable arbitration provision as a non-signatory. Thank you. Thank you. Now, we took you over time, but if you would like one minute to respond, you're welcome to take that time. Okay, thank you, Your Honor. I'll be brief, just to address a couple points from counsel. First of all, with respect to the no contract claim argument, plaintiff wants to have their cake and eat it, too. They essentially want it both ways. They say, hey, look, we don't have a contract claim here, so this pleading issue doesn't matter whatsoever. Yet in the absence of any claims, any contract allegations, specifically to the arbitration clause, they say, well, yeah, don't give import to the fact we have no claims about the contract, but then don't give import to the fact that we essentially pled around the arbitration clause to our benefit. So the fact that they didn't plead contract claims, didn't make specific allegations with respect to arbitration clause under Buckeye and his progeny, that would therefore result in the arbitrator making the decision about the enforceability of the contract as a whole. I must say I'm having trouble following that argument, but I can follow at least the genesis of it. And you agree that this is not a claim for breach of contract. This is a claim for breach of the Fair Debt Collection Act. I would agree, Your Honor, that to the best of my knowledge, there's been no allegation or claim regarding breach of contract made by plaintiff. But that doesn't mean that the defendants aren't entitled to the benefit of the bargain in a contract when that's certainly within the scope of the complaint. It's sort of like a 12B6 argument in a securities case. You can't plead around something just because it's to your advantage. What would be the benefit of the bargain that defendants would be entitled to? The benefit of the bargain, Your Honor, would be the arbitration clause that was in the contract and the attorney-retainer agreement that was signed by Ms. Smith. But the first time the contract, the contractual arbitration clause shows up then as a matter of pleading is when your client asserts it. That is to say they're not basing their claim on the contract. You're basing your defense on the contract. Well, Your Honor, they're basing the, as I understand it, the underwriting allegations in terms of what they're saying is a violation of the statutes. They've alleged the Debt Adjuster Act and the CPA derivatively from that. It's based on some of the provisions of the agreements between the parties. So it is part and parcel of their argument. Yeah, but they're not saying you breached the contract. They're saying you breached the statute. Correct. And you're defending, well, but we have a contractual obligation on your part to arbitrate. So the first time that shows up, it seems to me, is in your complaint. The first time specifically the contract is mentioned, the arbitration clause is on the motion to compel. But, again, the allegations are subsumed by the existence of the contract because it exists. I'll come back. Oh, sorry. Go ahead, please. Were the charges that were assessed against the plaintiff in the contract? Certainly the services and some of the charges are addressed in the contract, Your Honor. But, obviously, those go to the merits, and there are defenses to those. So we certainly would. And following up on Judge Fletcher's question, it's not surprising that she would have raised the arbitration provision only later, not in her initial complaint, but only later when you asserted rights for arbitration because her initial claim didn't assert a contract claim. So you can't really fault her for raising the arbitration claim later, can you? Well, I can, Your Honor, because it's a form selection clause. And to simply ignore it exists and say, hey, look, we're going to allege violations of the statute based on the contractual relationship between the parties and what fees were charged. But I'm going to ignore the fact that, you know, front and center, there's a form selection clause there. In any event, I suppose you do agree that that arbitration clause might not have to be asserted. Your client could have chosen not to assert it. It's a defense. It's a form selection clause. It's arbitration. Okay. Thank you very much. Okay. Thank you, Your Honor. Smith v. JEM Group now submitted for decision. Thank both sides for their arguments.
judges: Ebel, Fletcher, Rawlinson